UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

-------------------------------------------------- X

KEVIN GILL, SIERRA WHITLEY

      Plaintiffs,

      - against -

P.O.M. PAUL DAWKINS # 6674,

P.O.F. DORNEZIA AGARD # 6578,

SGT. SCOTT HAUG #730, SGT PHAM,

P.O.M. FOX, P.O.M. GRANDSTAFF

(of the 73rd Precinct)

      Defendants,

-------------------------------------------------- X

**AMENDED COMPLAINT**

**16 CV 1398 (LDH)(LB)**

**JURY DEMANDED**

Plaintiffs, KEVIN GILL, SIERRA WHITLEY by Pro Se, file this complaint of the actions

and procedures of the defendants herein, THE CITY OF NEW YORK, and P.O.F.

AGARD, P.O.M. DAWKINS, SGT. HAUG, SGT. PHAM, P.O.M. FOX , P.O.M.

GRANDSTAFF (of the 73rd Precinct).

## NATURE OF THE ACTION

1.  This is an action at law to redress the deprivation of rights secured to the Plaintiffs by Common Law, under color of statue, ordinance, regulation, custom, treaties and/or to redress the deprivation of rights, privileges, and immunities secured to the plaintiffs by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, and by Title 42 U.S.C. § 1983 [ and § 1985 ], [ and arising under the law and statues of the City and State of New York ].

### JURISDICTION

2.  The jurisdiction of this court is invoked pursuant to 42 U,S,C. § 1983, 28 U.S.C. § 1343, 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and under the First, Fourth, Fifth, Sixth, Seventh, Eight and Fourteenth Amendments to the United States Constitution.

3.  As the deprivation of rights complained herein occurred within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. § 1391 (b) and (c).

### THE PARTIES

4.  Plaintiffs are and were at all times material herein residents of the United States and the State of New York.

5.  At all relevant times Defendants Police officer (hereinafter "defendant officers") were, upon information and belief, and still are, agents and/officers employed by defendant City of New York.

6.  At all times herein, the defendant officers were acting under the color of their official capacity, and their acts were/are performed under the color of the statues and ordinances of the City of New York and/or the State

of New York. Defendant officers were/are the servants, agents, and employees of their co-defendant, the City of New York, such that their acts are imputed to the City of New York.

7. At all relevant times, the Defendant City of New York was and is a municipal corporation duly organized and existing under the laws of the State of New York, and was/is the employer of the defendant officers, and the actions of the defendant officers complained herein were done as part of the custom, practice, usage, regulation and/or at the direction of the defendant City of New York.

8. Plaintiffs are suing the defendant officers in their individual and official capacities.

9. Plaintiffs' are domestic and Common Law partners; confidants, therapists, caretakers, and sustainers of each other. At all times material Plaintiffs have lived for, of and by each other, making no distinctions between the needs, attitudes, intentions and actions of each other.

10. Plaintiffs' have at all time been each others alter ego. Every indignity and deprivation suffered by one Plaintiff – whether physical, Emotional, or psychologically has been experienced by both plaintiffs', directly or indirectly.

11. All of the Defendants, are alleged to be co-conspirators with each other, in that each agreed to participate and participated in the furtherance of the objective of a civil wrong as alleged in this Complaint.

12. Plaintiffs are informed and believes and thereupon alleges that each Defendant entered into a conspiracy and agreement with the other. Defendants had subsequently joined said conspiracy and ratified the prior acts and conduct of the Defendants who had previously entered

into said conspiracy. Plaintiffs are currently unaware of when each Defendant joined said conspiracy, and upon information and belief, alleges that all Defendants have knowingly, maliciously, and willfully entered into said conspiracy, which continues until this day.

13. The purposes of this ongoing conspiracy include, but are not limited to, the wrongs alleged herein. All Defendants' acts and failures to act as alleged herein were perpetrated in furtherance of the ongoing conspiracy.

14. There are other co-conspirators not named as Defendants in this complaint, who may be called as witnesses.

15. Plaintiffs are informed and believe and thereupon allege that at all times material herein, each Defendant was completely dominated and controlled by his or her co-Defendants, each was the agent, representative, and alter ego of the others, and all aided and abetted the wrongful acts of the others.

16. Whenever and wherever this complaint refers to any act by a defendant or Defendants, such allegations and references shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and/or severally.

17. Plaintiff is informed and believes and on that basis alleges that at all times material, each of the Defendants has acted as an employer and/or a joint employer within the meaning of 29 U.S.C. § 203(d).

18. Plaintiff is informed and believes and thereupon alleges that at all times material herein, each of the Defendants was the agent, employee and/or joint venture of, or working in concert with; co-Defendants, and was acting within the course and scope of such agency, employment, and/or joint venture or concerted activity.

19. To the extent that said conduct and omissions were perpetrated by certain Defendants, Plaintiff is informed and believes and thereupon alleges that the remaining Defendant and/or Defendants confirmed and ratified said conduct and omissions.

20. Whenever and wherever reference is made in this complaint to any act by a Defendant and/or Defendants, such allegations and references shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and/or severally.

21. Whenever and wherever reference is made to individuals who are not named as Plaintiffs or Defendants in this complaint but are or were employees/agents of Defendants, or any of them, such references shall be deemed to mean that such individuals at all relevant times acted on behalf of Defendants within the scope of their employment.

22. Plaintiffs' are distinctly Indigenous American in appearance, dress, mannerisms and culture. Plaintiffs are Private persons who live by common law and the laws of nature. For clarity, in this Complaint (and following arguments), European, Asian and American will describe the ambiguous racial classifications. Caucasian, Spanish, Jewish describes types of Indo- Europeans. Caribbean, West Indian, Hispanic, African American and Negro are used to describe Americans. The terms "White", White Citizen, Natural, Private, Indigenous - all convey "ideal" social status. By contrast, the terms Black, vacant and squatter convey sub standard social status. Anytime the term(s) squatter, Black or vacant has been used by Defendants – it has been used to blacken or dehumanize Plaintiffs in order to deprive Plaintiffs of life, liberty and property.

23. Plaintiffs', having interacted with every Defendant, believe and therefore

allege that their race and ancestry were the primary reason for their indignities suffered. Plaintiffs are also informed that the Defendants classify themselves West Indian, Asian and Caucasian. At all times Plaintiffs have done everything within their capacity to convey their Status as private and/or natural persons living by Nature's Law and Common Law. At all times plaintiffs were intentionally treated as Black, Negro, African, Colored; not as "White Citizens."

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

24. On or around November 10th, 2014, Defendants Fox and Grandstaff came to Plaintiffs homestead at 2362 Atlantic av. in Kings County. Defendants Fox and Grandstaff then started to kick and bang on Plaintiffs entrance gate. Startled by the unruly banging, Plaintiff Gill went to answer his front door. When Gill opened his door, he was told by Defendants to "Open up!!, what are you doing in there?" Gill, who noted the names Fox and Grandstaff asked the couple "what are you doing here, nobody called you?!!" Defendants repeated their demands "Open the door, let us in, you not supposed to be here" Gill responded "get the fuck out of here, I aint playing with yall today, I got all rights to be here, this my grandfathers house!" Plaintiff Gill closed his door and went back upstairs.

25. Minutes later Plaintiffs heard banging again at their gate. Plaintiffs opened their again and confronted the couple, who were screaming "open up or we going to call the Fire Department to break down this down!!" An agitated Plaintiff Gill replied "leave us alone, you break this door and ill sue both of yall!" then added "aint your uncle a Sargent at the 73, what you doing here harassing us? " referring to Defendant Grandstaff. Plaintiffs closed their front door and went back upstairs. The banging continued and moments

later their was a loud crack. Later that day Plaintiffs found out their front gate hinge had been broken.

26. On or around 12/12/2014, as Plaintiffs were coming out of their home, an Unmarked black car traveling east on Atlantic av. stopped in front of Plaintiffs home. The four Plainclothes Caucasian passengers came out their vehicle and surrounded Plaintiffs at their front door. Plaintiff Gill recognized them as agents/officers from the 73 precinct. One officer spoke "listen, you not supposed to be here, we spoke to the owner." Plaintiff Whitley then asked the protagonist "you spoke to Cyril?" Gill then asked "you spoke to my grandfather, you lying!?" Gill then locked his door as one of the officers tried to push the door open. The Officer remarked to the others "he has a key; its locked" to which Gill responded, "why wouldn't I have a key I told you its my family's yard ." Plaintiffs left the Four officers at their door and walked in the opposite direction.

27. On March 2, 2015 approximately 3:30 pm, Jewish civilians Moshe Khan and Walter Chaim Unlawfully entered Plaintiffs residence at 2362 Atlantic Avenue, with the intention of stealing Plaintiffs home. The couple walked upstairs to the second floor and upon seeing a startled Sierra Whitley, commanded her to "get out my house!!."

28. At that same instance, Plaintiff Kevin Gill, returning home did find Moshe Khan and Walter Chaim attempting to forcibly usher plaintiff Whitley (who appeared to be terrified) out the front door.

29. Defendant Walter Chaim had Plaintiffs' lock and chain length, screaming "you broke into my house!!." Plaintiff Gill then took his chain length and lock from Walter Chaim and ordered the civilian trespassers to "get the hell out of here" and told Plaintiff Whitley to "go back upstairs!!." Civilian trespassers

Moshe Khan and Walter Chaim walked out the front door screaming they were "calling the police!!" Plaintiff Gill also went outside to await the NYPD.

30. Minutes later Defendant officers Agard and Dawkins arrived. As they walked toward Plaintiff Gill, Walter Chaim and Moshe Khan told Defendant officers "They broke into my house." Officer Dawkins then asked Plaintiff Gill " You live here?" Kevin Gill answered "Yes, I live here and these men are harassing us."

31. Walter Chaim then began to walk inside 2362 Atlantic Ave. Defendants Agard and Dawkins following behind them. When plaintiff Kevin Gill attempted to block his doorway he was immediately grabbed by defendant officers. When Gill attempted to resist the unlawful seizure, his arms were twisted in an unnatural, .position that aggravated a pre- existing back injury. Gill was then pushed into a wall and handcuffed by Defendant Agard.

32. Defendant Dawkins then huddled with Moshe Khan and Walter Chaim (who later claimed to be Joseph Feder of Silver Investors Inc.) for about 3 minutes. Defendant Dawkins then pulled Plaintiff Gill outside while Defendant Agard allowed the two civilian to "discover" Plaintiffs homestead. Moshe Khan and Walter Chaim walked around and took pictures of Plaintiffs home. When a visibly pregnant Plaintiff Whitley tried to protest the invasion of her privacy she was told by Defendant Agard "shut up and stay in that room, its their house!" and "if you don't stay still I'm gonna lock you up too!"

33. While being held outside, Defendant Dawkins asked Plaintiff Kevin Gill "who's house is this!?" to which Plaintiff Gill replied, "its my house and all our Property!" Then added, "I wanna press charges for trespass on my property." Defendant Dawkins asked again "who's house is this!" to which Plaintiff Gill replied "I just told you, what's wrong with you?"

34. Defendant Dawkins then interrogated Gill for his "identification". Aware of the 73rd precincts and NYPD policy of unlawful searching for personal information via persons I.D., Gill refused stating "you already violated me, now you wanna steal my I.D.?" Defendant Dawkins then told Plaintiff and to produce "papers" for the house. Plaintiff Gill told defendant Dawkins to "ask him to produce papers for the house" (referring to Walter Chaim). Defendant Dawkins told Plaintiff to "shut up, thats another charge for not having your I.D."

35. After placing Plaintiff Gill in squad car Defendant Dawkins joined the other individuals inside 2362 Atlantic Ave. and told a visibly pregnant Sierra Whitley that she had to leave her home, and she was "lucky we not locking you up." Defendant officers' Fox and Grandstaff showed up and unlawfully evicted Plaintiff Whitley from her homestead and property. Even though Plaintiff Gill committed no crime, he was maliciously charged with Felony Possession of a weapon, menacing, false personation (for not giving up his I.D.) and criminal trespass on his home and property. This unauthorized arrest was approved by Defendant Sargent Haug and Sargent Pham.

36. Plaintiff Sierra Whitley walked to 73rd Precinct to check on plaintiff Gill. She spoke to defendant Dawkins who told her "Do not go back to that house. You are being locked out right now."

37. Plaintiff Whitley, distraught, hurried back to 2362 Atlantic Ave. Minutes later after arriving home she witnessed Myrko Bazlime, Moshe Khan, and Walter Chaim chain lock the gate and board the front door entrance. locking Plaintiff Whitley inside. Plaintiff Whitley remained locked inside her home until Gill was released from jail and able to secure a chain cutter.

38. At the 73rd precinct while being forcibly fingerprinted, Plaintiff Gill asked "I would like to make a report for trespassing and harassment" Defendant Agard replied, "no you cannot!". Gill then asked "why because they Jewish?" Defendant Agard replied "they have rights and you don't!; you shouldn't have Been there." A distraught Gill replied "What are you talking about?, Im suppose to be there its my grandfathers house; why yall tryna take my property!? Agard answered "Well that's a matter for rent Court Gill then asked, "then why am I locked up?" to which Defendant Officer Agard never responded. (exhibit B)

39. That every officer who had any involvement and/or was present at the location of the illegal entrance, harassment and unwarranted arrest described herein knew and was fully aware that the search and seizure was illegal and that the plaintiffs did not commit any crime or offense, and had a realistic opportunity to intervene to prevent the harm detailed above from occurring.

40. As a result of the aforementioned actions by defendant officers. Plaintiffs suffered and continue to suffer emotional distress, fear, embarrassment, humiliation, shock, discomfort, loss of liberty, difficulty sleeping, lost of sleep, loss of intimacy, headaches, persecution complex, loss of rights to familial association, loss of peace of mind, wages and financial losses, loss of pregnancy (refer to exhibit B), pain and damage, and damages to reputation.

## FIRST CAUSE OF ACTION: 42 U.S.C. § 1983

41. By this reference, plaintiffs incorporate each and every allegation and Averment set fourth in paragraphs 1 through 40 of this complaint as though fully set forth herein.

42. The conduct of defendant officers, as described herein, amounted to trespass

false imprisonment, assault, battery, unlawful entry, malicious abuse of

process, failure to intervene, unreasonable detention, warrantless search

and seizure, racial profiling, abuse of authority, unlawful taking of private

property, harassment, conspiracy, discrimination, selective enforcement,

fabrication of probable cause, denial of equal protection of the laws, denial of

rights to a fair trail, and malicious prosecution. At every instance, Defendants

went beyond the scope of their authority.

43. Such conduct described herein violated plaintiffs' rights under 42 U.S.C. §

1983 and the Fourth, Fifth and Fourteenth Amendments to the United

States Constitution.

44. Consequently plaintiffs have been damaged and hereby demand

compensatory and  punitive damages in an amount to be proven

at trail against each of the defendants, individually and severally.

**SECOND CAUSE OF ACTION: FAILURE TO TRAIN/SUPERVISE/DISCIPLINE**

**AND MUNICIPAL POLICY**- Plaintiffs against Defendant City of New York

45. By this reference, plaintiffs incorporate each and every allegation and

averment set forth in paragraphs 1 through 44 of this complaint as though

fully set forth herein.

46. Defendant City of New York, acting through the New York Police Department,

has actual and/or de facto policies, practices, customs and/or usages

of failing to properly train , supervise or discipline its police officers

concerning correct  practices in conducting investigations, the use of force,

lawful search of  individuals and/or their properties, the seizure, voucher

and/or release of seized properties, obligation not to promote or condone

perjury and/or assist in the prosecution of innocent persons and obligation

to effect an arrest only when probable cause exists for such an arrest, and

has failed to promulgate, put into effect and monitor the enforcement of
appropriate rules to ensure that invalid warrants are promptly vacated.

47. Further, the existence of the aforesaid unconstitutional policies, practices,
customs and/or usages may be inferred from repeated occurrences of similar
wrongful conduct.

48. Upon information and belief, the named individuals and Defendants
have a lengthy substantiated history of police misconduct, fraud
and dishonesty. Further, many of the named individuals and defendants
are named defendants in numerous lawsuits in this district of New York
alleging similar claims as those alleged herein-many of which lawsuits
have been settled by defendants and individuals, like the City of New York,
with said defendant(s) making substantial monetary payments to the
plaintiffs in the said lawsuits.

49. In addition to the named individuals and defendants, several officers of the
NYPD assigned to the NYPD-73rd Precinct- as the named authority
employing individuals and        defendants-routinely performing warrantless
searches and making unlawful evictions and arrests, charging innocent
persons with various fabricated crimes and/or offenses.

50. Most of the arrests and charges made by officers assigned to the NYPD - 73rd
Precinct are usually voided and/or dismissed by prosecutors for lack of
evidence.

51. Defendant, City of New York, has settled numerous lawsuits brought in this
district against several officers assigned to the NYPD - 73rd Precinct
concerning similar arrests and charges as those described herein.

52. Defendant, City of New York, maintained the above described policies,
practices, customs, or usages which lead to improper conduct by its police

officers and employees. In failing to take any corrective actions; Defendant, The City of New York, acted with deliberate indifference, and its failure was a direct and proximate cause of plaintiffs' injuries as described herein.

53. The actions of defendants, acting under color of State law, deprived plaintiffs of their due process rights, and rights, remedies, privileges, and immunities under the laws and Constitution of the United States, treaties, ordinances, customary international law and norms, custom and usage of a right; in particular, the right to be secure in their person and property, to be free from abuse of process, racial discrimination/profiling, and the right to due process.

54. By these actions, defendants have deprived plaintiffs of rights secured by Treaties (ICCPR), ordinances, customary international law and norms, custom and usage of a right, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. §1983.

## THIRD CAUSE OF ACTION: 42 U.S.C. § 1985(3)

- against Defendants

55. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 54 of this complaint as though fully set herein.

56. In an effort to dispossess Plaintiffs' of their property, Defendant officers Fox and Grandstaff conspired with other officers of the 73rd precinct and/or Brooklyn North Tactical Unit. Defendants Fox and Grandstaff also conspired with private citizens (Moshe Khan and Walter Chaim) to oust Plaintiffs from their homestead by manufacturing a crime of trespass. Defendants implored intimidation tactics such as damaging Plaintiffs entrance gate, threatening

Plaintiffs with "calling the FDNY" to "break down this door". Without regard

For the law, Defendants Fox and Grandstaff hired Defendants POF Agard and

Dawkins to deprive Plaintiffs of their common law and natural rights – also

of their Fourteenth Amendment right to due process of law. More

specifically, Defendants deprived Plaintiffs of their rights to equal protection

of the law and their right to inherit, possess and acquire property. Plaintiffs

were treated as aliens – based solely on their race and ethnicity. Plaintiffs

were not afforded the same immunities as the Civilian couple (Moshe Khan

and Joseph Feder) who are European Jews. Said private parties were not

the owners of Plaintiffs' home. Therefore, Plaintiffs were not committing a

crime, did not commit a crime – and Defendant officers had no reasonable

cause to suspect any crime had been committed by Plaintiffs. Conversely,

Plaintiffs did/do have probably cause to make a complaint against Moshe

Khan and Walter Chaim (AKA Joseph Feder) for trespass and assault

homestead. Plaintiffs' were not allowed make a complain with the NYPD and

The City of New York. Hence Plaintiffs' were let with no means of protecting

themselves in future attacks. Plaintiffs were left defenseless to protect their

property in future attacks by the 73rd precinct and Joseph Feder, Moshe Khan,

Myrko Bazlime and other agents acting through Silver Investors Inc.

Defendant Sargents' Haug and Pham furthered the conspiracy to put Plaintiff

Gill away and takeover his property. As Supervisors, Defendants' Haug

and Pham could have prevented further indignities from happening to

Plaintiffs - since there was no valid offense, or warrant for Plaintiffs'

arrest and/or eviction. Plaintiffs should have been left alone and allowed to

go back to their home. Instead, Plaintiff Gill was forced to accept 5 days on

Rikers Island for disorderly conduct. Defendants Klanish conduct has injured

Plaintiffs' physically, emotionally, spiritually and psychologically. Plaintiffs' injuries are not limited to just their feelings. It (pain and suffering) affects their daily activities and social interactions. Plaintiffs have not only lost material and financial opportunities; Plaintiffs' relatives, friends and children have not felt safe when visiting Plaintiffs' home. They also worry for Plaintiffs health.

57. Defendant officers conspired among themselves and conspired with other individuals to intentionally deprive plaintiffs of their constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, because of their race, Ancestry and/or ethnicity, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

58. In light of the foregoing therefore, defendant officers/civilians engaged in a conspiracy designed to deprive plaintiffs of their constitutional and federal rights in violation 42 U.S.C. § 1985. As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiffs sustained the damages hereinbefore stated.

## FOURTH CAUSE OF ACTION: NEW YORK STATE CONSTITUTION, ARTICLE 1 §§ 1, 5, 6, 8, 11 & 12

59. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 39 of this complaint as though fully set forth herein. By reason of the foregoing, and by arresting, detaining and imprisoning Plaintiff Gill without probable cause or reasonable suspicion, and harassing Plaintiffs and depriving them of due process and equal protection of laws, defendants deprived plaintiffs of due process and equal protection of laws, defendants deprived plaintiffs of rights, remedies, privileges, and immunities guaranteed to every Member of New York by

Article 1, § 1, (prohibiting disenfranchisement), Article 1 § 5 (prohibiting cruel and unusual Punishment), Article 1, § 6 (providing for due process), Article 1, § 8 (guaranteeing freedom of speech), Article 1, § 11 (prohibiting discrimination In civil rights and providing for equal protection of laws) & Article 1, 12 (prohibiting unreasonable searches and seizures) of the New York Constitution.

60. In addition, defendant officers, including SGT. Haug and SGT. Pham, conspired among themselves and conspired with civilians to deprive Plaintiffs of their constitutional rights secured by Article 1, §§ 1, 5, 6, 8, 11 & 12 of the New York Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

61. Defendant officers acted under pretense and color of state law and in their Individual and official capacities and within the scope of their respective employments as officers, agents, or employees. Defendant officers' acts were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. Defendant officers acted willfully, knowingly, and with the specific intent to deprive the plaintiffs of their constitutional rights secured by Article 1, §§ 1, 5, 6, 8, 11 & 12 of the New York Constitution.

62. Defendants, their officers, agents, servants, and employees were responsible for the deprivation of plaintiffs' state constitutional rights.

### FIFTH CAUSE OF ACTION: NYC LOITERING LAWSUIT SETTLEMENT AND
### UNCONSTITUTIONAL ARREST against Defendants

63. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 62 of this complaint as though

fully set forth herein.

64. The City of New York and their officers, agents, servants, and employees often detain and/or arrests Private/Natural Persons and Citizens for unconstitutional loitering charges. Charges and acts that have been deemed unlawful. A disproportionate amount of these violations were perpetrated against persons that specifically identify themselves as Black American, Negro, African American, Native American Indian and/or Indigenous. Most of these persons were doing nothing more than talking with their friends in a Public housing lobby or peacefully asking for someone to put to put them on the subway. Many of these persons were charged with Trespass, panhandling, Soliciting, or/and loitering. Federal and State courts have struck down those laws (loitering) since 1983 and has held Defendant City of New York in Contempt for (obstinance and uncooperativeness). Most recently in 2013, Defendant City of New York awarded 22,000 people – whom had been detained and/or arrested for manufactured trespassing, loitering, and solicitation charges - monetary damages in various amounts based on the the extent of their indignities.

65. The collective conduct of the defendants, as described herein, amounted to false imprisonment, trespass, illegal/warrantless search and seizure, unreasonable use of force, unreasonable detention, negligence, defamation, conspiracy, special injury, loss of consortium, harassment, abuse of power, fraud, negligent and intentional infliction of emotional distress and negligent hiring and retention of defendant officers.

66. Consequently, plaintiffs have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

## SIXTH CAUSE OF ACTION:INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

– against Defendants-

67. By this reference Plaintiffs incorporate each and every allegation and averment set fourth in paragraphs 1 – 66 of this complaint though fully set forth herein.

68. Defendants, and each of them, engaged in outrageous conduct towards Plaintiffs', with the intention to cause or with reckless disregard for the probability of causing Plaintiff to suffer severe emotional distress. To the extent that said outrageous conduct was perpetrated by certain Defendants', the remaining Defendants adopted and ratified said conduct with a wanton and reckless Disregard of the deleterious consequences to Plaintiffs'. As a proximate result of said conduct, Plaintiffs' have Suffered and continue to suffer extreme mental distress, humiliation, anguish, and emotional and physical injuries as well as economical losses-all to their damage in amounts to be proven at trial.

69. Defendants' and several other officers from the 73rd precinct knew that 2362 Atlantic av. was Plaintiffs home, yet ignored this fact. More importantly, Defendants unlawfully evicted a pregnant woman with no regard for her safety and well being. The behavior of the Defendant officers was emphatically uncourteous, unprofessional and disrespectful. Defendants committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of injuring Plaintiffs'; from an improper and evil motive amounting to malice and in conscious disregard of plaintiffs' rights, entitling Plaintiffs' to recover punitive damages in amounts to be proven at trial.

## SEVENTH CAUSE OF ACTION

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

-against defendants'-

70. By this reference, plaintiffs' incorporates each and every allegation and averment set forth in paragraphs 1 – 69 of this complaint as though fully set forth herein.

71. All defendants and each of them knew or reasonably should have known that the conduct described herein would and did proximately result in physical and emotional distress to plaintiffs'.

72. At all relevant times, all defendants, and each of them, had the power, ability, authority, and duty to stop engaging in the conduct described herein and/or to intervene to prevent or prohibit said conduct.

73. Despite said knowledge, power and duty, Defendants negligently failed to act so as to stop engaging in the conduct described herein and/or prevent or prohibit such conduct or otherwise protect Plaintiffs'. To the extent that such said negligent conduct was perpetrated by certain defendants', the remaining defendants confirmed and ratified said conduct with the knowledge that plaintiffs' emotional and physical distress would thereby increase, and with a wanton and reckless disregard for the deleterious consequences to Plaintiffs.

74. As a direct and proximate result of defendants negligent conduct, Plaintiffs' have suffered and continue to suffer serious emotional distress, loss of enjoyment of life anguish, emotional and physical injuries, and loss of consortium, as well as economic losses all to their damage in amounts to be proven at trial.

## EIGHTH CAUSE OF ACTION: FALSE IMPRISIONMENT

against Defendants'-

75. By this reference, Plaintiffs' incorporates each and every allegation set forth in paragraphs 1 – 74 of this complaint as though fully set forth herein.

76. Defendants violated Plaintiffs' personal liberty by acting in a manner that had the effect of confining Plaintiffs' against their will and limiting their contact with each other and anyone of the outside world. The Defendants accomplished this restraint thru expressed and implied threats of physical force and the acting in a manner which had the effect of threatening harm to Plaintiffs.

77. Additionally, Plaintiff Gill was jumped, restrained, handcuffed and arrested for attempting to prevent strangers, including Defendant Officers from entering Plaintiffs abode - an unalienable right to protect his house, papers and effects from unreasonable search and seizure.

78. As a proximate result of said conduct, Plaintiffs' have suffered and continue to suffer bodily injury, extreme mental distress, humiliation and anguish, loss of consortium as well as other physical and emotional injuries, as well as other economical losses, all to their damage in amounts to be proven at trial.

79. Defendants committed the acts alleged herein maliciously and fraudulently and oppressively with the wrongful intention of injuring Plaintiffs from an improper and evil motive, amounting to malice and in conscious disregard of Plaintiffs' rights. Plaintiffs' thus are entitled to recover punitive damages in amounts to be proven at trial.

### NINTH CAUSE OF ACTION: TRESPASS TO REAL PROPERTY

Plaintiffs'- against POM Fox, POM Grandstaff, POF AGARD, POF Dawkins

80. The allegations of paragraphs 1 through 79 are re-alleged and incorporated

by reference as if fully set forth herein.

81. Upon inheriting 2362 Atlantic av. 11212 Kings County in 2006, Plaintiff Gill has
    had exclusive rights to his home. This includes the Commercial and residential
    Parts known as Block 1436   Lot 22,  This also includes all mechanical,
    agricultural and personal possessions.

82. Defendants did enter Plaintiffs abode without permission. Defendants did
    enter Plaintiffs Abode without law and probable cause.

83. Plaintiff Whitley as co-owner had exclusive right to her property. Upon
    entering plaintiffs home, Defendants Plaintiffs due process. Defendants then
    allowed 2 strangers to enter and scope out Plaintiffs homestead.

84. Defendant officers have acted intentionally, willfully, and with reckless
    disregard for Plaintiffs rights to exclusive possession of their homestead, as a
    result Plaintiffs are entitled to actual and punitive damages in an amount to
    be determined at trial.

## TENTH CAUSE OF ACTION: LOSS OF CONSORTIUM

### - against Defendants

85. By this reference, Plaintiffs' incorporates each and every allegation
    and averment set forth in paragraphs 1 – did 84 of this complaint.

86. Defendants, by holding Gill captive and locking Whitley inside her home for
    2 days caused Plaintiff Gill to experience much pain and suffering. The
    deprivation of Gill's presence in the home caused Plaintiff Whitley to
    experience "nervous episodes" of trepidation, physical discomfort,
    annoyance, and emotional distress. It took a distraught Plaintiff Gill two days
    to secure a lock cutter. And a strenuous 2 hours to cut the chain from his
    gate bars.  A feat that aggravated a pre existing back injury. Because of
    Gill's absence, A Pregnant Whitley was forced to do all house chores which

Includes walking up and down two and three flights of stairs multiple times daily- a task Plaintiff Gill took over because of her pregnancy.

87. The increased strenuous tasks caused both Plaintiffs to put a strain on themselves physically. Plaintiff Whitley, whose Pregnancy was diagnosed as "high risk" by a physician, was also told by this same physician (Woodhull Hospital on February 28, 2015) – "stay off your feet". Plaintiffs' believe the The stress and strain caused by their ordeal at the hands of the Defendants Caused Plaintiff Whitley to have a pre mature birth, and subsequently lose her child. Gill, who reinjured his back (5 herniated/ruptured discs) Gill could not complete Plaintiffs usually cultivation of their plantation. Because of the defendants conspiracy to destroy Plaintiffs relationship, both plaintiffs have suffered and still continue to suffer from loss of intimate relations due to frigidity caused by their humiliating ordeal.

88. As a result of the Defendants' intentional actions, Plaintiffs have suffered and are continuing to suffer great harm and injury, including but not limited to economic loss, humiliation, embarrassment, emotional distress, mental anguish, stress, depression, and the deprivation of the right to life liberty and the pursuit of happiness.

## ELEVENTH CAUSE OF ACTION: ABUSE OF PROCESS

### Plaintiff Gill against Defendants

89. By this reference, Plaintiffs' incorporates each and every allegation and averment set forth in paragraphs 1 – and 84 of this complaint.

90. Plaintiffs, having intimate knowledge, believe and therefore allege that on 3/2/2015, Defendants Agard and Dawkins arrived at 2362 Atlantic av. With Designs of depriving Plaintiffs of their life, liberty and property. Realizing Plaintiffs were private persons with standing who committed no crime,

Defendants Agard and Dawkins conspired with each other to invent a charge when Gill attempted to refuse them entrance into Plaintiffs home. Although defendant POF Agard claimed "it was a matter for rent court" because it was a property dispute, Defendants initiated a court action instead of releasing Gill from the 73rd Precinct.

91. Because of the Felony charge (possessing his own chain length brought from Home Depot), Plaintiff Gill was not released from jail on his own recognizance but released on the condition that he had to "call in" and report in person to the court house (120 Schmerhorn St.) every week for at least 90 days when his case would have been dismissed. Having to report every week created a physical and economical hardship for Plaintiffs. Especially Gill who suffers everyday from Chronic back pain.

92. Defendants', having the ulterior motive of disposing Plaintiffs of their property, abused their authority to criminally prosecute Plaintiff Gill. Defendant Supervising officers also knew/know that chain length used to secure property was not a weapon and does not constitute a weapon under the charge of menacing. Defendants also fabricated a "false personation" because Gill refused Defendant Dawkins command to relinquish his I.D. card after arresting Gill without probable cause.

93. As a proximate result of said conduct, Plaintiffs' have suffered and continue to suffer bodily injury, extreme mental distress, humiliation and anguish, loss of consortium as well as other physical and emotional injuries, as well as other economical losses, all to their damage in amounts to be proven at trial.

94. Defendants committed the acts alleged herein maliciously and fraudulently and oppressively with the wrongful intention of injuring Plaintiffs from an

improper and evil motive, amounting to malice and in conscious disregard
of Plaintiffs' rights. Plaintiffs' thus are entitled to recover punitive damages
in amounts to be proven at trial.

## TWELTH CAUSE OF ACTION: ASSAULT

against - Defendants

95. By this reference, Plaintiffs' incorporates each and every allegation
and averment set forth in paragraphs 1 – 94 of this complaint.

96. Defendants intentionally used the threat or implied threat of causing bodily
Harm to Plaintiffs. Said threats caused Plaintiffs to fear for their life. This
Threat was accomplished by gesturing to and grabbing their utility belts
which holsters deadly weapons, including firearms, metal rods, and pepper
spray. The conduct of defendant alleged herein amounts to assault and were
done with ill will and meant to cripple Plaintiffs' spirit.

97. As a result of Defendants evil and wanton behavior Plaintiffs have been
harmed and disabled. To this very day Plaintiffs still suffer emotionally
psychologically, spiritually and physically from the trauma caused by
Defendants actions.

98. As a direct and proximate result of the misconduct and deprivation
of rights guaranteed to plaintiffs' detailed above, plaintiffs' sustained
the damages hereinbefore stated.

## THIRTEENTH CAUSE OF ACTION: BATTERY

Plaintiff Gill against – POF Agard, POM Dawkins

99. By this reference, Plaintiffs' incorporates each and every allegation and
averment set forth in paragraphs 1 – 98 of this complaint.

100. Defendants Agard and Dawkins intentionally used physical force in order

To subdue and restrain Plaintiff Gill. This physical contact was without

consent and caused harm to Plaintiff Gill. Furthermore, Gill forcibly

fingerprinted and forced to were handcuffs for hours. This caused Plaintiff

Gill to experience pain to his arms, wrist, back and shoulders.

101. As a result of Defendants evil and wanton behavior Plaintiffs have been

harmed and disabled. To this very day Plaintiffs still suffer emotionally

psychologically, spiritually and physically from the trauma caused by

Defendants actions.

102. As a direct and proximate result of the misconduct and deprivation

of rights guaranteed to plaintiffs' detailed above, plaintiffs' sustained

the damages hereinbefore stated.

## FOURTEENTH CAUSE OF ACTION: 42 U.S.C § 1981 - violation of equal rights under the law- against Defendants

103. The allegations of paragraphs 1 through 102 are re-alleged and incorporated by reference as

is fully set forth herein.

104. Defendants have discriminated against Plaintiffs because of their race in

Violation of U.S.C. § 1981 and have acted intentionally, willfully, and

with reckless disregard for Plaintiffs' federally protected civil rights.

105. As a result of the Defendants' actions, Plaintiffs have suffered and

are continuing to suffer great harm and injury, including but not

limited to economic loss, humiliation, embarrassment, emotional

distress, mental anguish, stress, depression, and the deprivation of the

right to be treated on an equal basis with other persons regardless of race

and ancestry.

106. Consequently, plaintiffs have been injured - while continuing to endure

The lingering images of their indignities - which are one point in

consciousness (plaintiffs feel their trauma as if it was yesterday) - and

hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

## FIFTHTEENTH CAUSE OF ACTION: 18 U.S. Code § 242

Against- Defendants

107.  By this reference, Plaintiffs' incorporates each and every allegation and averment set forth in paragraphs 1 – 106 of this complaint.

108.  Defendants willfully deprive Plaintiffs of their life, liberty, and Property because of their (Plaintiffs) ethnic background and/or Race. Defendants accomplished this deprivation by the threat of using firearms and deadly weapons. Such acts included kidnapping, false imprisonment, assault, battery and other threats of violence.

109.  As a direct and proximate result of the egregious conduct and deprivation of rights guaranteed to plaintiffs' detailed above, plaintiffs' sustained the damages hereinbefore stated.

WHEREFORE, plaintiffs respectfully pray judgment as follows:

a.    For compensatory damages against all defendants in an amount to be proven at trial;

b.    For exemplary and punitive damages against all defendants in an amount to be proven at trial.

C.    For all costs of plaintiffs theoretical time spent, preparation and execution of complaint (this includes but is not limited to: cost of copies, notarized affidavits, certified mail, police reports, ink, paper, etc.)

d.    For such other and further relief that this court deems proper.

DEMAND FOR TRAIL BY JURY

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiffs demand a trial by jury.

**I declare under the penalty of perjury that the above/foregoing is true and correct.**

Signed this _30_ day of _JANUARY_, 20 _17_.

Signature of Plaintiff(s): _Sierra Whitley_

_(KG.)_

Mailing Address:     1519 E. New York av. (PH)

Bklyn, N.Y. 11212

Telephone Number:  (347) 241-8805