UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KEVIN GILL,

                              Plaintiff,

                    v.

P.O.M. DAWKINS #6674, P.O.F. AGARD
#6578, SGT. SCOTT HAUG #730, SGT. PHAM,
P.O.M. FOX, and P.O.M. GRANDSTAFF (of the
73rd Precinct),

                              Defendants.

**MEMORANDUM AND ORDER**

16-CV-1398 (LDH) (SB)

LASHANN DEARCY HALL, United States District Judge:

　　Plaintiff Kevin Gill, proceeding pro se, brings the instant action against New York Police

Department Officers Paul Dawkins, Jared Fox, and Dornezia Agard, and Sergeants Scott Haug

and Thu Pham, asserting claims for unlawful entry and search, false arrest, excessive force,

malicious prosecution, malicious abuse of process, failure to intervene, unreasonable detention,

selective enforcement, denial of the right to a fair trial, and unlawful taking of private property

pursuant to 42 U.S.C. § 1983; conspiracy to deprive him of his constitutional rights pursuant to

42 U.S.C. § 1985; race discrimination pursuant to 42 U.S.C. § 1981; deprivation of rights under

the color of law pursuant to 18 U.S.C. § 242; and related state claims.[1]

---

[1] Plaintiff also names Officer Grandstaff as a defendant.  (*See* ECF Nos. 34, 37.)  Officer Grandstaff was never
served with a summons and a copy of the amended complaint.

1

Plaintiff's April 8, 2016 motion for leave to proceed *in forma pauperis* pursuant to 28 U.S.C.

§ 1915(a) was granted on April 11, 2016. (ECF No. 5.)  Defendants move pursuant to Rule 56 of

the Federal Rules of Civil Procedure for partial summary judgment.[2]

## UNDISPUTED FACTS[3]

Plaintiff's claims arise from his encounter with Defendants at a private home located at

2362 Atlantic Avenue, Brooklyn, New York (the "Property").  (*See* Defs.' Statement of Material

Facts Pursuant to Local Civ. R. 56.1 ("Defs.' 56.1") ¶¶ 6–30, ECF No. 49-1.)  Cyril Bridgewater

owned the Property from September 6, 2008, through October 30, 2015.  (*Id*. ¶¶ 1–2.)

Bridgewater attests that he does not know Plaintiff and that he never gave Plaintiff permission to

visit, enter, or reside at the Property.  (*Id*. ¶¶ 3–5.)  Nonetheless, Plaintiff maintains that he and

---

[2] The history of this litigation is considerable.  On March 18, 2016, Plaintiff asserted more than a dozen causes of action, including unlawful entry and search, false arrest, excessive force, denial of equal protection, and denial of a fair trial, all pursuant 42 U.S.C. § 1983; a *Monell* claim against the City of New York; conspiracy to deprive Plaintiff of his constitutional rights pursuant to 42 U.S.C. § 1985; and related state claims.  (ECF No. 1.)  Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court dismissed Plaintiff's § 1985 claim on April 11, 2016.  (ECF No. 5.)  During the September 14, 2016 pre-motion conference, Plaintiff voluntarily withdrew (and the Court therefore dismissed, with prejudice) his false arrest claims; the Court dismissed, with prejudice, Plaintiff's excessive force claims; and the Court dismissed, without prejudice, his remaining state claims. (Sept. 14, 2016 Min. Entry & Order.)  On December 22, 2016, Plaintiff requested leave to file an amended complaint.  (ECF No. 28.)  Magistrate Judge Lois Bloom granted Plaintiff's request on January 4, 2017, and ordered that the proposed amended complaint "shall not include any of the claims that were voluntarily withdrawn . . . or dismissed."  (ECF No. 29.)  Plaintiff filed his amended complaint on February 2, 2017.  (ECF No. 34.)  On June 6, 2018, Plaintiff voluntarily dismissed his claims against the City of New York.  (ECF No. 52.)  Defendants filed a motion for summary judgment on March 19, 2019. (ECF No. 63.)  On September 19, 2019, the Court vacated its September 14, 2016 order to the extent it dismissed Plaintiff's false arrest and excessive force claims with prejudice.  (Sept. 19, 2019 Order.)  The Court indicated that it would construe Plaintiff's amended claims for false imprisonment and assault and battery, together, as claims for false arrest and excessive force, respectively.  (*Id*.)  Defendants filed a supplemental memorandum of law in support of its motion for summary judgment as to these claims on November 13, 2019.  (ECF No. 68.)

[3] The following facts are undisputed unless otherwise noted and are taken from the parties' statements of material facts pursuant to Local Civ. R. 56.1 and the record of admissible evidence.  Facts that are not contradicted by citations to admissible evidence are deemed admitted.  *See Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

Bridgewater are "related through family" and that Bridgewater is "like a grandfather" to him. (June 4, 2018 Decl. John Garcia ("Garcia Decl."), Ex. D at Tr. 18:21–25, ECF No. 50-4.)

On March 2, 2015, at about 2:30 p.m., Plaintiff encountered two men inside the Property as he was entering. (Defs.' 56.1 ¶ 21; Garcia Decl., Ex. D at Tr. 61:22–62:6.) The two men were later identified as Moshe Khan and Walter Chaim. (Defs.' 56.1 ¶ 22.) Plaintiff demanded that Khan and Chaim leave the Property. (*Id*. ¶ 21; Garcia Decl., Ex. D at Tr. 61:22–62:6.) Khan and Chaim in turn called 911. (Garcia Decl., Ex. D at Tr. 64:15–18.) Khan, Chaim, and Plaintiff then walked outside to wait for the police to arrive. (*Id*. at Tr. 64:15–23.) At about 3:20 p.m., Officers Agard and Dawkins arrived at the Property. (Defs.' 56.1 ¶ 25; Garcia Decl., Ex. D at Tr. 65:16–17.) Thereafter, Plaintiff accused Khan and Chaim of trespassing. (Garcia Decl., Ex. D at Tr. 67:11–16.) Chaim in turn accused Plaintiff of breaking and entering. (Defs.' 56.1 ¶ 27; Garcia Decl., Ex. D at Tr. 67:18–23.) When Khan attempted to reenter the Property, Plaintiff blocked the entrance with his hand. (Garcia Decl., Ex. D at Tr. 68:8–15.) Officer Agard then grabbed Plaintiff, twisted his arm behind his back, and pushed him into the house and up against the wall before eventually handcuffing him. (Defs.' 56.1 ¶¶ 28, 30; Garcia Decl., Ex. D at Tr. 68:14–18, 69:21–22, 105:8–12, 106:18–22.) At the same time, Officer Dawkins was "holding" Plaintiff. (Garcia Decl., Ex. D at Tr. 105:15–106:5.) Plaintiff twisted, turned, and shifted his body weight in an attempt to "not let it be easy." (Defs.' 56.1 ¶ 29; Garcia Decl., Ex. D at Tr. 106:6–11.) After Plaintiff was handcuffed, Officer Dawkins "pulled" him outside and asked him for his identification. (Garcia Decl., Ex. D at Tr. 69:12–18.) Plaintiff maintains that having his

arm "twisted in an unnatural way" behind his back "aggravated [his] preexisting back pain." (*Id.* at Tr. 104:12–105:3.)

Plaintiff was charged with criminal possession of a weapon in the third and fourth degrees, false personation, criminal trespass in the third degree, and menacing in the second degree in Kings County Criminal Court. (Pl.'s Counter 56.1, Ex. A at 1, ECF No. 57-1.) The arrest report indicates that Plaintiff used a large metal link chain to swing at the complainant, causing the complainant to fear for his life. (*Id.*) Plaintiff ultimately pleaded guilty to disorderly conduct, and the remaining charges were dismissed. (Defs.' 56.1 ¶ 31; Garcia Decl. Ex. E, ECF No. 64-5.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant[s] [are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Where the non-movant bears the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. *Celotex Corp.*, 477 U.S. at 325. Once the movants meet their initial burden, the non-movant may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court is to believe the evidence of the non-movant and draw all justifiable inferences in his favor, *Anderson*, 477 U.S. at 255, but the non-movant

must still do more than merely assert conclusions that are unsupported by arguments or facts, *Bellsouth Telecomms.*, *Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

"It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and emphasis omitted), including when facing a summary judgment motion, *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003). Nevertheless, the "application of this different standard does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Id*. at 50 (internal quotation marks omitted).

## DISCUSSION

### I.      42 U.S.C. § 1981 and 18 U.S.C. § 242

Plaintiff brings claims under 42 U.S.C § 1981 and 18 U.S.C. § 242. Defendants argue that both statutes are inapplicable to this action. (*See* Defs.' Mem. L. Supp. Mot. Summ. J. ("Defs.' Mem.") 18–20, ECF No. 64.) The Court agrees.

Section 1981 "provides a remedy against private actors who intentionally discriminate on the basis of race or ethnicity." *Wong v. Mangone*, 450 F. App'x 27, 30 (2d Cir. 2011) (internal quotations omitted). To establish a claim under § 1981, a plaintiff must demonstrate:  (1) that he is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute. *Brown v. City of Oneonta, New York*, 221 F.3d 329, 339 (2d Cir. 2000). The enumerated activities include the rights "to make and enforce contracts, to sue, be parties, give evidence," and to receive "the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981. Defendants maintain that § 1981 does not apply here because

the conduct complained of does not concern a contract between the parties.  (*See* Defs.' Mem. 19.)  This argument misses the mark.  A plaintiff can establish a claim concerning any of the enumerated activities, not just the making and enforcing of contracts.  Nonetheless, Plaintiff's claim fails because § 1981 "does not provide a separate private right of action against state actors."  *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018).  Section 1983 "provides the sole cause of action available against state actors alleged to have violated § 1981."  *Id*. at 616.  Accordingly, Plaintiff's § 1981 claim for race discrimination is dismissed.

Next, as Defendants correctly argue, 18 U.S.C. § 242 is a criminal statute that cannot give rise to a private cause of action.  *Robinson v. Overseas Military Sales Corp*., 21 F.3d 502, 511 (2d Cir. 1994) (holding that criminal statutes such as § 242 do not provide private causes of action).  Plaintiff's claim under § 242 is therefore, dismissed.

## II.     The Fourth Amendment

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures."  U.S. Const. amend. IV. Plaintiff maintains that, in violation of these protections, Defendants unlawfully entered and searched the Property, falsely arrested him, and subjected him to excessive force.  (*See generally* Pl.'s Opp'n Defs.' Mot. Summ. J. ("Pl.'s Opp'n") ECF No. 66.)  The Court addresses each claim in turn.

### A.     Unlawful Entry and Search

It is well-settled that a plaintiff must possess a reasonable expectation of privacy in the places or items being entered or searched in order to invoke the Fourth Amendment.  *See California v. Ciraolo*, 476 U.S. 207, 211 (1986) ("The touchstone of Fourth Amendment analysis is whether a person has a constitutionally protected reasonable expectation of privacy." (internal quotations omitted)).  Of relevance here, courts have long held that a trespasser has no

6

reasonable expectation of privacy in premises he unlawfully occupies.  *See Rakas v. Illinois*, 439 U.S. 128, 143 n.12  (1978) ("A burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy, but it is not one which the law recognizes as 'legitimate.'"); *Gill v. City of New York*, 15-CV-5513 (ARR) (LB), 2017 WL 1097080 at *6 (E.D.N.Y. Mar. 23, 2017) (collecting cases for the proposition that squatters' Fourth Amendment claims under § 1983 have been routinely rejected by courts in the Second Circuit); *Walls v. Giuliani*, 916 F. Supp. 214, 221 (E.D.N.Y. 1996) (noting that "the Fourth Amendment does not protect the right of a person to make his home in someone else's house").

In urging the dismissal of Plaintiff's claim, Defendants argue that Plaintiff lacks standing to bring a claim for unlawful entry and search of the Property because he was a squatter with no reasonable expectation of privacy in the Property.[4]  (Defs.' Mem 8–11.)  In support of this argument, Defendants rely on an affidavit sworn by Bridgewater and a property deed recorded with New York City's Office of the City Register (the "Deed").  (*See id.*)  In his affidavit, Bridgewater states that he owned the Property from September 16, 2008, through October 30, 2015; that he does not know Plaintiff; that he is not related to Plaintiff; and that he never gave Plaintiff permission to visit, enter, or reside at the Property.  (*See* Garcia Decl. Ex. A ¶¶ 2, 4–5, ECF No. 50-1.)  The Deed identifies Bridgewater as the owner and indicates that Bridgewater sold the property to Silver Investors, Inc. on October 30, 2015.  (Garcia Decl. Ex. C at DEF1398-0064, ECF No. 50-3.)  In the face of this evidence, there is but one conclusion to be drawn—

---

[4] A squatter is "[a] person who settles on property without any legal claim or title."  *Blair v. Inside Edition Prods.*, 7 F. Supp. 3d 348, 359 (S.D.N.Y. Mar. 14, 2014) (citation omitted).

Plaintiff had no ownership interest in the Property and therefore, no reasonable expectation of privacy in the Property.

Plaintiff seeks to avoid this conclusion by countering that he adversely possessed the Property.  (*See* Pl.'s Opp'n 5–7.)  To establish a claim of adverse possession, a plaintiff must demonstrate that his occupation of property is:  "(1) hostile and under claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for the required period of 10 years." *Jaffer v. Hirji*, 887 F.3d 111, 116 (2d Cir. 2018) (internal quotations and citation omitted).  In this regard, Plaintiff offers an affidavit in which he states that he "continuously and adversely possessed [the Property] since November 16, 2006 to the exclusion of all others."  (*See* Pl.'s Counter 56.1, Ex. B at 25, ECF No. 57-1.)  He maintains that his occupation was an "actual and visible appropriation and possession" of the Property that was also "open and notorious" and to the exclusion of others.  (*Id*.)  Plaintiff fails to offer a single fact that might support these assertions.

Even assuming Plaintiff had occupied the property since November 2006 as his affidavit suggests, that affidavit cannot support a finding that Plaintiff had adversely possessed the Property on March 2, 2015.  Adverse possession is only possible after 10 years of continuous occupation.  *See Jaffer*, 887 F.3d at 116.  Thus, the earliest date on which Plaintiff could be

found to have adversely possessed the Property is November 16, 2016—six months after the events giving rise to this action.  Plaintiff's claimed adverse possession is defeated on these facts.

Having adduced evidence that Plaintiff holds no legal title to the Property, Defendants have shown that Plaintiff lacks a reasonable expectation of privacy, and therefore, standing to bring a Fourth Amendment claim.  Accordingly, Plaintiff's claim is dismissed.

### B.    False Arrest

Plaintiff challenges his March 2, 2015 arrest as unconstitutional on the basis that Officers Agard and Dawkins lacked probable cause.  (*See* Pl.'s Opp'n 7.)  Defendants counter that Plaintiff's challenge is barred by his guilty plea.  (Defs.' Suppl. Mem. L. Supp. Mot. Summ. J. ("Defs.' Suppl. Mem.") 2–3, ECF No. 68.)  Defendants are correct.

Simply put, a plaintiff cannot recover for false arrest if he was convicted of the offense for which he was arrested.  *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986).  Courts in this circuit have routinely dismissed false arrest claims where the plaintiff pleaded guilty to the offense leading to his arrest.  *See Spies v. Brown*, 98-CV-4708, 2002 WL 441991, at *2 (E.D.N.Y. Mar.13, 2002) (finding that guilty plea constitutes a conviction barring section § 1983 claims for false arrest and malicious prosecution).  So is the case where a plaintiff pleaded guilty to a lesser charge.  *See McNeill v. People of City & State*, No. 06-CV-4843 (NGG), 2006 WL 3050867, at *3 (E.D.N.Y. Oct. 24, 2006) (dismissing plaintiff's § 1983 false arrest claim where plaintiff was arrested for second degree murder but later pleaded guilty to assault), *aff'd sub nom*, 242 F. App'x 777 (2d Cir. 2007); *Papeskov v. Brown*, 97-CV-5351 (SS), 1998 WL 299892, at *5 (S.D.N.Y. June 8, 1998) (Sotomayor, J.) ("[A] plea of guilty, even to a charge lesser than

that for which the plaintiff was arrested, bars a § 1983 action."), *aff'd*, 173 F.3d 845 (2d Cir.

1999).

Here, Plaintiff was arrested and charged with criminal possession of a weapon in the third

and fourth degrees, false personation, criminal trespass in the third degree, and menacing in the

second degree.  (Pl.'s Counter 56.1, Ex. A at 1.)  On December 15, 2015, Plaintiff pleaded guilty

to a lesser charge of disorderly conduct.  (Defs.' 56.1 ¶ 31.)  On these facts, a claim for false

arrest fails.

### C.    Excessive Force

Police officers are prohibited from using "unreasonable and therefore excessive force . . .

in the course of effecting an arrest."  *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010).

However, "[o]fficers are entitled to use some degree of force when restraining a suspect during

an arrest."  *Faruki v. City of New York*, 517 F. App'x 1, 2 (2d Cir. 2013).  In assessing the

reasonableness of the force used by an officer, courts must employ a "case and fact specific"

inquiry that balances "the nature and quality of the intrusion on the plaintiff's Fourth

Amendment interests against the countervailing governmental interests at stake."  *Tracy*, 623

F.3d at 96.  In doing so, courts consider, among other things, "(1) the nature and severity of the

crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the

officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade

arrest by flight."  *Id*.  Defendants argue that, as a matter of law, Officers Agard and Dawkins'

actions do not constitute excessive force.  (*See* Defs.' Suppl. Mem. 7–8.)  The Court agrees.

Here, Officers Agard and Dawkins were responding to a 911 call from Khan and Chaim

alleging that Plaintiff was trespassing on their property.  (*See* Defs.' 56.1 ¶¶ 25–30.)  When

Officers Agard and Dawkins arrived at the scene, Plaintiff proceeded to block the entrance to the

Property.  (Garcia Decl., Ex. D at Tr. 68:8–15.)  Officer Agard grabbed him, twisted his arm

behind his back, and pushed him into the house and up against the wall before eventually

handcuffing him.  (Defs.' 56.1 ¶¶ 28, 30; Garcia Decl., Ex. D at Tr. 68:14–18, 69:21–22, 105:8–

12, 106:18–22.)  At the same time, Officer Dawkins was "holding" Plaintiff.  (Garcia Decl., Ex.

D at Tr. 105:15–106:5.)  During the course of the arrest, Plaintiff was twisting, turning, and

shifting his body weight in an effort to "not let it be easy."  (Defs.' 56.1 ¶ 29; Garcia Decl., Ex.

D at Tr. 106:6–11.)  In other words, he was resisting arrest.  Plaintiff maintains that having his

arm "twisted in an unnatural way" behind his back "aggravated [his] preexisting back pain."

(Garcia Decl. Ex. D at Tr. 104:12–105:3.)

The Court is typically loath to grant summary judgment on an issue that is so inherently fact

specific.  However, on these facts, this Court is unable to arrive at a different outcome.  Several

courts in this circuit have concluded that a similar application of force by officers under similar

circumstances is objectively reasonable.  *See Bartlett v. City of New York*, CV-031961 (CPS),

2005 WL 887112, at *9–10 (E.D.N.Y. Feb. 11, 2005) (dismissing excessive force claim where

officer grabbed plaintiff's wrist and twisted her arm behind her back after plaintiff tried to

prevent officer from entering her home and made physical contact with officer while holding that

it was "objectively reasonable" for the officer to believe this conduct was lawful at the time).

One such case, *Kalfus v. New York & Presbyterian Hosp.*, 476 F. App'x 877 (2d Cir. 2012), is

virtually indistinguishable from this instant action.  There, the Second Circuit affirmed the

finding that no reasonable juror could find excessive force where the officer twisted the

trespasser's arm behind his back and pushed him even though he posed no physical threat.  *Id*. at

881.  Of particular relevance, the trespasser was resisting arrest.  *Id*.  The same logic applies

here. That said, the Court is cognizant of the Second Circuit's admonition that "[t]he fact that a

person whom a police officer attempts to arrest resists . . . no doubt justifies the officer's use of

some degree of force, but it does not give the officer license to use force without limit." *Sullivan*

*v. Gagnier*, 225 F.3d 161, 165–66 (2d Cir. 2000).  No truer words have been uttered.  Here,

however, the nature of the force was limited and reasonable under the circumstances.  *Cf.*

*Concepcion v. New York City et al.*, 19-CV-1693, 2020 WL 7018211, at *2 (2d Cir. Nov. 30,

2020) (reversing dismissal of excessive force claim on motion for summary judgment where

student physically resisted school safety agents' attempts to take him to the dean's office and

agents tackled student with such force that he suffered a concussion and pinned student to the

ground by holding his legs and keeping a knee on his head).  Plaintiff's excessive force claim is

dismissed.[5]

## III.   Remaining Federal Claims

In addition to the claims discussed above, Plaintiff brings claims for conspiracy pursuant

to § 1985; and malicious prosecution, malicious abuse of process, failure to intervene,

unreasonable detention, selective enforcement, denial of the right to a fair, and unlawful taking

of private property each pursuant § 1983.[6]  Defendants do not move for summary judgment on

these remaining federal claims.  Nonetheless, a district court "shall dismiss" claims in an *in*

*forma pauperis* action "at any time" where it is satisfied that the claim "(i) is frivolous or

malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief

---

[5] "A police officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers."  *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) (internal quotations omitted).  Here, the Court reads Plaintiff's amended complaint as bringing a failure to intervene claim with respect to Officers Agard and Dawkins' alleged use of excessive force.  However, "[t]here can be no failure to intervene . . . where there was no constitutional violation[.]").  *Hardy v. Daly*, 748 F. App'x 379, 381 (2d Cir. 2018); *see also Feinberg v. City of New York*, 99-CV-12127 (RC), 2004 WL 1824373, at *4 (S.D.N.Y. Aug. 13, 2004) (holding that granting summary judgment on underlying false arrest claim required dismissal of failure to intervene claim).  Accordingly, Plaintiff's claim for failure to intervene is dismissed.

[6] Plaintiff also purports to bring a claim against the City of New York for failure to train/supervise.  (Am. Compl. ¶¶ 45–54.)  This claim must also be dismissed, as Plaintiff voluntarily dismissed, with prejudice, all claims against the City of New York on June 6, 2018.  (ECF No. 52.)

from a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  As set out

below, the Court is satisfied that each of Plaintiff's remaining federal claims is without merit and

should be dismissed pursuant to Fed. R. Civ. 12(b)(6).[7]

### A.    Malicious Prosecution

A plaintiff alleging malicious prosecution must allege:  "(1) the defendant either

commenced or continued a criminal proceeding against the plaintiff; (2) the proceeding

terminated in the plaintiff's favor; (3) there was no probable cause for the criminal proceeding;

and (4) that the criminal proceeding was instituted in actual malice."  *Lacara v. Town of Islip*,

791 F. Supp. 69, 71 (E.D.N.Y. 1992) (quoting *Janetka v. Dabe,* 892 F.2d 187, 189 (2d Cir.

1989)).  Plaintiff fails to allege that any criminal proceeding was terminated in his favor, nor

could he, as Plaintiff pleaded guilty to disorderly conduct.  (*See* Defs.' 56.1 ¶ 31; Garcia Decl.

Ex. E.)  On this basis, Plaintiff's claim fails.  *See Brewster v. Nassau Cty*., 349 F. Supp. 2d 540,

---

[7] A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id*. While this standard requires more than a "sheer possibility" of a defendant's liability, *id*., "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the [C]ourt must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the [C]ourt must accept the factual allegations of the complaint as true." *Id*. (citations omitted).  Moreover, where, as here, a plaintiff is proceeding pro se, his pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 55 U.S. 89, 94 (2007) (per curiam)). This rule is "particularly so when the pro se plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).

550 (E.D.N.Y. 2004) (dismissing malicious prosecution claim where the criminal proceeding

against plaintiff had not terminated in his favor).

    **B.**    **Conspiracy**

    To state a claim for conspiracy under § 1985(3), a plaintiff must allege that the

defendants "(1) engaged in a conspiracy, (2) for the purpose of either directly or indirectly

depriving him or a class of persons of which he is a member, of equal protection of the laws; and

that (3) acts taken by the defendant in furtherance of the conspiracy (4) deprived him, or the

class, of the exercise or privilege of a citizen of the United States." *New York State NOW v.*

*Terry*, 886 F.2d 1339, 1358 (2d Cir. 1989), *cert. denied*, 495 U.S. 947 (1990).  Plaintiff

maintains that "Defendant officers conspired among themselves . . . to intentionally deprive

[Plaintiff] of [his] constitutional rights . . . because of [his] race, Ancestry and/or ethnicity."

(Am. Compl. ¶ 57.)  He continues that the officers took "numerous overt steps in furtherance of

such conspiracy" and that "Defendant [Seargants'] Haug and Pham furthered the conspiracy to

put [him] away and takeover his property."  (Am. Compl. ¶¶ 56–57.)  Plaintiff further alleges

that "[r]ealizing [Plaintiff] [was] [a] private person[] with standing who committed no crime[,]

Defendants Agard and Dawkins conspired with each other to invent a charge when [Plaintiff]

attempted to refuse them entrance into Plaintiff's home[;]" and (2) "Defendants Fox and

Grandstaff also conspired with private citizens (Moshe Khan and Walter Chaim) to oust

Plaintiffs from their homestead by manufacturing a crime of trespass."  (*Id.* ¶¶ 56, 90.)  Together,

the Court construes these allegations as pleading a claim of conspiracy to commit the conduct

giving rise to Plaintiff's Fourth Amendment claim as to his right to be secure in his own home

and Plaintiff's Fifth Amendment claim as to his right to be free from malicious prosecution.

However, the Court, *supra*, has dismissed these claims for lack of merit.  The dismissal of these

underlying claims warrants dismissal of any related conspiracy claim.  *See United Bhd. of Carpenters & Joiners of Am.* v. *Scott*, 463 U.S. 825, 833 (1983) (Section 1985(3) "provides no substantial rights itself to the class conspired against. The rights, privileges, and immunities that § 1985(3) vindicates must be found elsewhere[.]" (internal citations and quotation marks omitted)); *see also Benzinger v. NYSARC, Inc. New York City Chapter*, 385 F. Supp. 3d 224, 236 (S.D.N.Y. 2019) (dismissing § 1985 conspiracy claim where plaintiff failed to allege a predicate federal right).  Accordingly, Plaintiff's conspiracy claim is dismissed.

### C.   Malicious Abuse of Process

To state a claim for malicious abuse of process, a plaintiff must allege that the defendant "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act; (2) with intent to do harm without excuse or justification; and (3) in order to obtain a collateral objective that is outside legitimate ends of process."  *Savino v. City of New York*, 331 F.3d 63, 69–70 (2d Cir. 2004).  Plaintiff fails to make any such allegations.  At most, Plaintiff alleges that the was arrested and subsequently prosecuted.  However, these allegations are insufficient on their own to make a claim for malicious abuse of process.  *See Youngblood v. City of New York*, 15-CV-3541 (ATH) (BP), 2016 WL 3919650, at *3 (S.D.N.Y. June 27, 2016) ("That Defendants sought Plaintiff's arrest and prosecution does not constitute such a 'collateral objective.'" (citing *Hauser v. Bartow*, 7 N.E.2d 268, 270 (N.Y. 1937))).

### D.   Unreasonable Detention

To state a claim for unreasonable detention, a plaintiff must allege that:  "(1) [he] has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) the actions of the officers violated that right, and (3) the officers' conduct 'shocks the conscience.'"  *Ying Li v. City of New York*, 246 F. Supp. 3d

578, 622 (E.D.N.Y. 2017) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 208–09 (2d Cir. 2007).  While Plaintiff makes a passing reference to unreasonable detention, he fails to assert any factual allegations in this regard.  This warrants dismissal.

### E.    Selective Enforcement

A violation of equal protection for selective enforcement arises where:  "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LaTrieste Rest. & Cabaret Inc. v. Vill. of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994).  Plaintiff alleges that Defendants deprived him of his right to "equal protection of the law" and his right "to inherit, possess[,] and acquire property."  (Am. Compl. ¶ 56.)  He further alleges that he was treated as an alien "based solely on [his] race and ethnicity."  (*Id*.)  Specifically, he was "not afforded the same immunities as [other civilians] who are European Jews."  (*Id*.)  Plaintiff makes no allegation that the other civilians were similarly situated.  Moreover, the allegations in the amended complaint are conclusory.  This warrants dismissal.

### F.    Right to a Fair Trial

To establish a claim for denial of a right to a fair trial, a plaintiff must plausibly allege "that investigating officers fabricated information that was likely to influence a jury's verdict, forwarded that information to prosecutors, and that the plaintiff suffered a deprivation of life, liberty, or property as a result."  *Hicks v. Marchman*, 719 F. App'x 61, 63 (2d Cir. 2018).  Here,

the amended complaint does not identify any specific information alleged to have been fabricated.  The claim is dismissed, accordingly.

### G.    Unlawful Taking of Private Property

The Government is prohibited "from taking private property for public use without just compensation."  *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001) (citation omitted).  A taking occurs when a government authorizes "a permanent physical occupation" of property. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982).  As an initial matter, Plaintiff has not alleged that any governmental entity has authorized a permanent physical occupation of the Property.  (*See generally* Am. Compl.)  Regardless, Plaintiff's claim fails. Trespassers, squatters, and illegal occupants have no constitutional property interest in the residential buildings that they occupy.  *See De Villar v. City of New York*, 628 F. Supp. 80, 83 (S.D.N.Y. 1986) (finding plaintiffs who entered the building illegally lacked property interest.) Plaintiff never held legal title to the Property, and the owner never gave him permission to reside there.  Accordingly, Plaintiff's claim must be dismissed.  *See Crown v. Tr.'s of Patrolmen's Variable Supplements Fund*, 659 F. Supp. 318, 320 (S.D.N.Y.) (dismissing takings claim where plaintiffs lacked property interest), *aff'd sub nom. Crown v. Trustees of Patrolmen's Variable Supplements Fund*, 819 F.2d 47 (2d Cir. 1987).

\*       \*       \*

Having dismissed all of the federal claims in this action, the Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) over Plaintiff's claims state claims. *See Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) (quoting *Cave v. E. Meadow Union Free Sch. Dist.,* 514 F.3d 240, 250 (2d Cir. 2008)) ("We have said that if a plaintiff's federal claims are dismissed before trial, 'the state claims should be dismissed as well.'"); *see*

*also First Capital Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004) ("The exercise of supplemental jurisdiction is left to the discretion of the district court[.]").  These claims are therefore dismissed, without prejudice, for lack of subject-matter jurisdiction.

## CONCLUSION

For the foregoing reasons, Defendants' motion for partial summary judgment is GRANTED.  Plaintiff's claims pursuant to 42 U.S.C. § 1983 for unlawful entry and search, false arrest, and excessive force; claim pursuant to 42 U.S.C. § 1985 for conspiracy to deprive him of his constitutional rights; claim pursuant to 42 U.S.C. § 1981 for race discrimination; and claim pursuant to 18 U.S.C. § 242 for deprivation of rights under the color of law are each dismissed, with prejudice.  Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court dismisses sua sponte all remaining federal claims.  Within thirty (30) days of entry of this memorandum and order, Plaintiff is directed to show cause why his claims against Officer Grandstaff should not be dismissed pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

SO ORDERED.

Dated: Brooklyn, New York
      November 30, 2020

/s/ LDH
LASHANN DEARCY HALL
United States District Judge